UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-05112 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

MEMDORANDUM OPINION AND ORDER

Plaintiff Pamela W. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of

the final decision of the Commissioner of Social Security ("Commissioner") denying her application

for disability insurance benefits. Pamela, by counsel, has filed a motion seeking reversal of the

Administrative Law Judge's ("ALJ") decision. The Commissioner responded with a motion for

summary judgment in support of affirming the ALJ's decision. For the reasons that follow, the

Court grants Pamela's motion [14], denies the Commissioner's motion [20], and remands this matter

for further proceedings consistent with this opinion.

**Background**

Pamela filed an application for benefits on March 28, 2018, alleging a disability onset date of

September 1, 2017. Her application was denied initially and upon reconsideration. Pamela then

requested a hearing before an ALJ, which was held on September 10, 2019. At the hearing, a

vocational expert ("VE") testified, along with Pamela. On September 26, 2019, the ALJ issued a

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, the Court refers to the plaintiff by her first name and the first initial of her last name, or only by her first name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d).

decision denying Pamela's application. The Appeals Council then declined review, leaving the

ALJ's September 2019 decision as the Commissioner's final decision reviewable by this Court under

42 U.S.C. § 405(g).

**Judicial Standard of Review**

Judicial review of an ALJ's decision is limited to determining whether the decision is

supported by substantial evidence and whether the ALJ applied the correct legal standards in

reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Surprise v. Saul*, 968 F.3d 658, 661–62 (7th Cir. 2020) (citation

omitted). An ALJ need not discuss every piece of evidence but must "build a logical bridge from

evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citation omitted).

"Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his

or her obligation to build that logical bridge." *Sheila W. v. Saul*, 395 F. Supp. 3d 974, 978 (N.D. Ill.

2019) (Cole, J.) (citation omitted). Though a federal court's review of an ALJ's decision is

deferential, and courts do not reweigh the evidence or substitute their judgment for that of the ALJ,

the ALJ's decision will be remanded if it lacks sufficient evidentiary support, an adequate discussion

of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

Cir. 2003); *Villano*, 556 F.3d at 562.

**Disability Determination Standard**

A person is disabled under the Social Security Act if she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security

Administration has set forth a five-step sequential evaluation for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). This evaluation considers whether (1) the claimant has engaged in substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the claimant can perform her past relevant work; and (5) the claimant is capable of performing any work in the national economy. *Id.*

**ALJ's Disability Determination**

The ALJ analyzed Pamela's claim in accordance with the Social Security Administration's five-step sequential evaluation process. The ALJ found at step one that Pamela had not engaged in substantial gainful activity since September 1, 2017. At step two, the ALJ concluded that Pamela had the severe impairments of depression and anxiety disorder.[3] At step three, the ALJ determined that Pamela did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, the ALJ found that Pamela's impairments caused moderate limitations in (1) concentrating, persisting, or maintaining pace; (2) interacting with others; and (3) adapting or managing herself. The ALJ also found that Pamela had a mild limitation in understanding, remembering, or applying information.

The ALJ then determined that Pamela had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

---

[3] The ALJ also noted that: (1) in her application for benefits, Pamela alleged high blood pressure as a medical condition contributing to her disability; and (2) Pamela has hypertension, which the ALJ found to be non-severe. Tr. 16.

"she can understand, remember, and carry out simple instructions and make simple work-related decisions." Tr. 18. The ALJ additionally found that Pamela "cannot work at a production rate pace" but "can tolerate occasional changes in a routine work setting, occasional interactions with supervisors and co-workers, and no interaction with the general public." *Id.* The ALJ went on to summarize Pamela's allegations and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that [Pamela's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." *Id.* at 18–19. Although the ALJ found that the record confirmed that Pamela had severe mental impairments that created "some degree [of] functional limitations," the ALJ found that the alleged severity of her symptoms was not consistent with her overall mental health treatment, which the ALJ felt was "relatively conservative and routine." *Id.* at 19–20. The ALJ said that, with treatment, Pamela's "vegetative symptoms may fluctuate with temporary stressors but overall remain stable with no recommendations for aggressive treatment to support any further reductions in her [RFC]." *Id.* at 19–21. According to the ALJ, Pamela's activities of daily living were also inconsistent with her testimony and allegations, suggesting that she "may have underreported the effectiveness of her treatment or overemphasized her degree of mental complaints, or is simply not as limited as she claims." *Id.* at 21.

As to medical opinions, the ALJ stated that she "did not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from [Pamela's] medical sources." *Id.* at 22. As to the state agency psychological consultants who reviewed the medical record, although they opined that Pamela did not have a severe mental impairment, the ALJ did not find their opinions persuasive. *Id.*

4

at 16. The ALJ also found unpersuasive the opinion of Pamela's treating therapist, John O'Leary,

Ph.D., for a number of reasons, including that: (1) although Dr. O'Leary was a specialist in

psychology, the ALJ claimed there was no indication that he was trained in agency rules, regulations,

and definitions regarding disability; (2) the ALJ found Dr. O'Leary's opinion that Pamela was

markedly or extremely limited to be unsupported by his own treatment notes, which showed no

history of psychiatric hospitalization or crisis intervention; (3) Dr. O'Leary's opinion was based in

part on patient reports; and (4) the ALJ believed Dr. O'Leary's opinion was inconsistent with both

his own clinical findings and the record as a whole, including Pamela's "self admissions [*sic*] of [a]

generally good range of daily functioning" and the clinical findings of Pamela's treating psychiatrist

who indicated that Pamela's mental complaints were generally well managed with a conservative

course of pharmacotherapy. *Id.* at 22–23.

At step four, the ALJ, relying on the testimony of the vocational expert, concluded that

Pamela was unable to perform her past relevant work as a telephone operator and hotel clerk. At

step five, the ALJ further relied on the testimony of the vocational expert who said that an

individual with Pamela's restrictions could perform work as an industrial cleaner, laundry worker,

and lab equipment cleaner. Based on the vocational expert's testimony and considering Pamela's

age, education, work experience, and RFC, the ALJ concluded that there are jobs in significant

numbers in the national economy that Pamela can perform, leading to a finding that she is not

disabled under the Social Security Act.

**Analysis**

Pamela contends that the ALJ erred for several reasons, including that: (1) the ALJ

improperly evaluated her RFC by failing to account for her moderate limitations in concentration,

persistence, and pace, among other reasons; (2) the ALJ improperly assessed opinion evidence,

5

including rejecting Dr. O'Leary's opinion that Pamela was extremely limited in maintaining concentration, persistence, or pace and that she would be off-task more than 21 percent of the workday; and (3) the ALJ improperly evaluated Pamela's allegations about her activities of daily living and treatment history, as well as neglected to discuss her work history. The Court agrees that the ALJ's RFC determination failed to properly account for Pamela's acknowledged limitations in concentration, persistence, or pace. Because the Court finds remand necessary on this basis, it need not reach Pamela's additional arguments.

"The RFC is the maximum that a claimant can still do despite her mental and physical limitations." *Judy D. v. Saul*, 17 C 8994, 2019 WL 3805592, at *3 (N.D. Ill. Aug. 13, 2019) (Schenkier, J.) (quoting *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008)). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano*, 556 F.3d at 563 (citing S.S.R. 96-8p). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

Here, the ALJ found at Step Three that Pamela has a moderate limitation with respect to concentration, persistence, or maintaining pace. The ALJ cited Pamela's Function Report and hearing testimony, where she reported having poor focus and concentration, as well as difficulty paying attention such that she could not complete tasks. Tr. 17. The ALJ noted, however, that Pamela also reported engaging in "activities that require significant concentration, persistence, and pace," such as "preparing simple meals, paying bills, counting change, using money orders, watching TV, listening to music, and reading magazines." *Id.* The ALJ further noted that Pamela was able to maintain a "conversational exchange" during the disability hearing and that she "consistently presents with intact memory, attention, and concentration" during mental status examinations. *Id.*

Based on Pamela's "ability to concentrate during examinations, to complete activities of daily living, and to respond appropriately to questions even at her disability proceeding," the ALJ found that Pamela had "only moderate difficulties" in concentration, persistence, or pace. *Id.* The ALJ then concluded that Pamela had the RFC to "understand, remember, and carry out simple instructions and make simple work-related decisions" but could not work at "a production rate pace." *Id.* at 18. The ALJ also concluded that Pamela could tolerate "occasional changes in a routine work setting [and] occasional interactions with supervisors and co-workers" but could not tolerate interactions with the general public. *Id.*

Pamela contends that the ALJ's RFC assessment failed to account for her limitations in concentration, persistence, or pace, warranting reversal. She argues that the Seventh Circuit has held that a limitation to "simple and repetitive tasks"[4] constitutes "a limitation in the complexity of work," not concentration, persistence, or pace. (Dkt. 14 at 3.) Pamela further argues that her concentration, persistence, and pace issues are unrelated to the *complexity* of a given task, and the ALJ "cited no evidence suggesting that complex instructions or decisions triggered [her] deficiencies in concentration, persistence, or pace." (*Id.* at 5.) Rather, Pamela claims that her concentration, persistence, and pace issues relate to "task initiation and completion on account of her psychiatric symptoms and need to nap." (*Id.*) Pamela additionally argues that the evidence shows she would be unable to sustain the RFC fashioned by the ALJ because she would be too distracted by her symptoms, citing the following examples, among others: losing focus and zoning out when talking to others, withdrawn psychomotor activity, crying spells, and an inability to finish what she started.

---

[4] In its motion, the Commissioner responds that a restriction to simple, repetitive tasks "is not at issue here." (Dkt. 21 at 4.) The Commissioner appears to refer to the fact that the RFC determined by the ALJ involved a limitation to "simple instructions" and "simple work-related decisions," not simple tasks. Regardless, the RFC fails to accommodate the limitations acknowledged by the ALJ. *See supra.*

(*Id.* at 4.) Pamela contends that the ALJ erred by failing to include any limitations in the RFC to account for her acknowledged difficulties, such as off-task time, extra breaks, or slower-paced work. (*Id.*)

The Commissioner responds that the ALJ "acknowledged plaintiff's alleged difficulty concentrating by finding her moderately limited in the functional area of maintaining concentration, persistence, and pace," and argues that the ALJ properly addressed those acknowledged limitations by tailoring the RFC to address Pamela's particular symptoms. (Dkt. 21 at 4 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).) Specifically, the Commissioner states that the ALJ addressed Pamela's complaints of difficulty focusing with "simple-instructions" and "simple-decisions" limitations and addressed "the possible effect of plaintiff's reported anxiety and decreased frustration tolerance—particularly around others—by prohibiting work involving production-rate pace and limiting her interpersonal interaction." (*Id.*) In addition, the Commissioner rejects Pamela's contention that she deserved allowances for off-task time, extra breaks, or slower-paced work, because, according to the Commissioner, Pamela merely "list[ed] a jumble of symptoms and declare[d] that they would have precluded work." (*Id.* at 5–6.) The Commissioner claims that Pamela is improperly asking the Court to reweigh the evidence that the ALJ adequately considered.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(3). "The Seventh Circuit has repeatedly found that requiring a claimant to perform only 'simple' work—whether in the form of tasks performed, judgments and decisions made, or instructions followed—does not account for moderate limitations in concentration, persistence, or pace." *Dula A. v. Saul*, No. 18 cv 4253, 2019 WL 3386998, at *5 (N.D. Ill. July 26, 2019) (Cox, J.) (citations omitted); *see also Moreno v. Berryhill*, 882

8

F.3d 722, 730 (7th Cir. 2018) (limitation to "simple work instructions" and "routine work" and ability to "exercise simple work place judgments" with "no more than occasional changes in the work setting" in hypothetical to VE did not account for claimant's moderate limitations in concentration, persistence, or pace). This is because "an individual's ability to perform simple work is distinct from her ability to maintain the concentration and focus needed to sustain her performance of tasks for an extended period of time." *Dula A.*, 2019 WL 3386998, at *6 (internal quotations and citation omitted). "[S]omeone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020).

The ALJ's RFC determination does not sufficiently allow the Court to trace the path of the ALJ's reasoning with respect to Pamela's moderate limitations in concentration, persistence, or pace. The RFC purports to account for Pamela's "complaints of difficulties with memory, focus, and an inability to complete tasks" by limiting her to "understand[ing], remember[ing], and carry[ing] out no more than simple instructions and mak[ing] simple work-related decisions." Tr. 22. But the ALJ does not explain how Pamela's difficulties with concentration and task completion are accommodated by a restriction to simple instructions and decisions. While a limitation to simple instructions and decisions may have addressed Pamela's reported difficulties with written and verbal instructions (*Id.* at 19), the Court is left to wonder how such a limitation is responsive to Pamela's difficulties with concentration, focus, and task completion. Indeed, she reported that, although her attention level varied, she could "sometimes" pay attention for ten minutes. *Id.* Furthermore, unlike in *Jozefyk*, on which the Commissioner relies, Pamela testified about restrictions in her capabilities related to concentration, persistence, or pace, and the ALJ relied on her testimony and reported difficulties in those areas in determining that Pamela had a moderate limitation with respect to them.

Once the ALJ made such a finding, she was required to adequately address it within the RFC. She did not.

In addition, the Court notes that the ALJ "painted an incomplete picture of [Pamela's] limitations in her hypothetical to the VE," though Pamela does not expressly raise this issue in her motion.[5] *Gregory J. v. Kijakazi*, No. 19 CV 2475, 2021 WL 5906065, at *4 (N.D. Ill. Dec. 14, 2021) (Gilbert, J.). "Both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including moderate limitations in concentration, persistence, or pace." *Id.* (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Here, the ALJ presented a hypothetical to the VE which omitted any reference to limitations in concentration, persistence, or pace. Instead, the hypothetical limited Pamela to understanding, remembering, and carrying out simple instructions, making simple work-related decisions, and refraining from work involving a production rate pace. Tr. 47. The hypothetical also contemplated occasional changes in a routine work setting, occasional interactions with supervisors and coworkers, and no interaction with the public. *Id.* While there is "no magic words requirement," the ALJ "must ensure that the VE is apprised fully of the claimant's limitations, so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quotations and citations omitted); *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.") (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). "The best way to do that is by

---

[5] Pamela cites case law recognizing that both the RFC and hypothetical to the vocational expert must include the claimant's limitations, including difficulties with concentration, persistence, and pace. But she focuses on the RFC in her arguments.

including the specific limitations—like CPP [concentration, persistence, and pace]—in the hypothetical." *Crump*, 932 F.3d at 570 (citation omitted).

On remand, it is important that the ALJ explain each of Pamela's medically supported limitations, including any limitations in concentration, persistence, or pace, in both the RFC and hypothetical to the VE to determine if there are jobs that exist in significant numbers that she can perform. Furthermore, the ALJ will ensure that there is a logical bridge connecting the evidence to her conclusions with respect to Pamela's mental limitations, including any difficulties with concentrating, persisting, or maintaining pace.

Because the failure to properly assess Pamela's RFC warrants remand, the Court need not reach the remaining issues identified by Pamela in her motion. The Court offers no opinion at this juncture as to whether the ALJ's findings as to those issues were or were not appropriate.

**Conclusion**

For the foregoing reasons, the Court grants plaintiff's motion to reverse the decision of the Commissioner of Social Security [14] and denies the Commissioner's summary judgment motion [20]. The Court remands the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Date: 8/23/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge